I do know, your honors, that my client is not going to be deported no matter what else happens. You don't count on it. We've got uniformed people in this. I might be deported. Andrew Lundberg for the appellant, your honors. Could you, in your argument, there's the wandering through this convoluted language problem, but can I just get a clear understanding of your position, assuming that you're trying to, as I understand your argument to be, that the plaintiff's complaint has the potential for damages, precisely what you rely upon, whether it's, and I know you tried to bring it within the attorney fees aspect, do any of the causes of action pled have any potential for damages, even if the remedy that the plaintiffs have tagged onto the relief site do not specify that they seek the option, at least at the present time, of requesting damages? For example, under the Ladderman Act, do the facts pled, if proved, justify, would they justify an award of damages, the same as to any of the other causes of action? Your honors, and let me say, I'm substituted in this counsel as of this Monday. Okay, let me, so I'll let you agree on the brief. He was deported. We didn't handle the case below either. Let me say this, Mike, I do know that our brief does address the question of whether monetary relief is available on those substantive causes of action. I believe it articulates which ones would permit an award of damages under the substantive law of those causes of action. I think in any event, it's clear that the claim for attorney's fees satisfies the requirement of the policy here, that the claim be for damages. Your primary claim is basically in terms of reading the insurance language. Exactly, your honor. I don't really see that. Here's why I'm having trouble with it. When you look at damages treatises, McCormick or all the others that have been written over the years, they just don't count attorney's fees as part of damages, except on its reach of a contract to pay attorney's fees. Well, that's true, your honor. The attorney's fees are treated as costs under the English rule, and they're not reimbursable under the American rule. Where the English rule applies, or where, well, to be more specific, in California, where they may, in some circumstances, be costs taxed against the insured, this Cutler O'Rosie Unified School District versus Tulare County says it's costs taxed against the insured. I like that. It's not damages. And it just looks to me like you're asking for something that's really novel and doesn't have pay support for it. Well, your honor, let me talk about that for a minute, because I think you're right to focus on Cutler O'Rosie. What I think happened here is that Judge Carney below had what I'd call a Cutler O'Rosie moment. He thought that his task was to attempt to understand what the term damages means when it's not otherwise defined. And that was the error below the required reversal here, because here we have a definition of what damages is. It's in the national casual policy. It says including. And you're saying that including means that it refers back to the word damages, so that where costs and fees, of course, Section 1988 tells us that costs are, that attorney's fees are taxed as part of costs. Well, I'm actually making a slightly different and, I think, an easier point, which is I'm not relying on the word costs. I'm not relying on the clause that says including costs. I'm simply saying that here the definition of what damages are, which is undefined in the Cutler O'Rosie case, here the definition of what damages constitutes is a monetary award. And I'm, your honor, Judge Kleinfeld, I would say. I thought that the words in the policy here were very similar to Cutler O'Rosie. Well, they're similar. I mean, they're insurance policies, so there's a lot of similar language.  Here, let me tell, let's sharpen the focus. Damages is a defined term. Let's take that. In this policy. Okay. Damages means a monetary judgment, award, or settlement arising from a covered claim. Claim is a defined term. Claim means a demand or suit made upon the insured for damages. Circular. Correct. In Cutler O'Rosie. Why are you backing away from the rest of that sentence that says monetary judgment, award, or settlement, leaving out the circular part, including all costs taxed against the other party? And if Section 1988, which is what's invoked here in the California statute, says costs are, include attorney's fees. Well, I'm certainly not backing away from it. I thought I was making what was more sort of a simpler Occam's razor-tight point, which is you don't even really need to get into a debate about cost and the sort of reductio ad absurdum slippery slope that the national casualty would have you go down talking about mileage to depositions and that sort of thing, because an award of attorney's fees is clearly an award. It's a monetary award, and, in fact, they concede on page 18 of their brief, but it is. But the claim in this case is for equitable relief. It's not a claim for damages. Well, I think that begs the question, Your Honor, with all due respect. I think the question is, what are the plaintiffs seeking? And what the plaintiffs are seeking in this case is some equitable remedies plus a big, fat check. And there's no doubt about that. There's no doubt that they are seeking attorney's fees. And is the prayer for relief in Cutler a request for attorney's fees? Well, it certainly does. And, you know, whether it did or not, I mean, if they're authorized by statute, you could get into a debate about whether they had to plead them. But I think attorney's fees, and here's an important distinction, which I think goes to this sort of slippery slope issue. Attorney's fees are unlike taxable costs. And it's not on the district court, of course. You know what Rule 54 looks like. Attorney's fees are not awarded. Yeah, it's like the case that ended up in the Supreme Court on that one. Exactly. Attorney's fees are not awarded the same as other costs. Attorney's fees are more clearly like a classic claim for relief based upon the violation of a substantive right. When you seek attorney's fees in a case like this, you are essentially saying, I'm entitled to receive attorney's fees because those fee award is tied to the violation of a substantive right. Costs, I get if I go in and I prevail on an issue. And, in fact, I don't have to litigate my entitlement to taxable costs. The clerk awards them to me. On the other hand, if I want to get attorney's fees, I have to go before a judicial officer, either the district judge or a magistrate under Rule 54, and I have to make a showing of my entitlement to those fees. And that's, again, as I say, I think financial casualty was graciously forced to concede. I mean, an award of attorney's fees is a monetary award. And, unlike Cutler O'Rosie, here we have a policy that the insurance company wrote. It didn't have to write it the way it wrote it. It kind of excluded attorney's fees. And, of course, we indicate, I think in page 18 of our brief, that there are insurance companies out there who are aware of this issue and do that all the time. This is not a new issue. Cutler O'Rosie was decided in 1994. I've been doing this for about 25 years. And I can tell you I've argued this issue with many insurance companies many times as to whether a prayer for attorney's fees constitutes a prayer for damages or not. This is not a new issue for the insurance industry. And national casualty was certainly free, had it wanted to, to say, by the way, in case the issue comes up, damages does not include attorney's fees. And here's actually an important point, although I don't think was highlighted in the brief. If you look at the definition of damages, national casualty quoted in the brief and says the definition reads in its entirety. They actually didn't quote it in its entirety. If you look at the definition of damages in the policy, there's the paragraph stating, generally speaking, what damages means. And then there's a list of six exceptions to that, a list of six exclusions. And I think that's on the record at page 53, among other places. If you look at the way they wrote the definition, it says, here's what damages means. It means a monetary award, including costs and prejudgment interest and whatnot. But it means a monetary award. So you have to write a check to somebody. And then it says, by the way, there's some checks that you have to write to somebody. The thing about attorney's fees that really distinguishes them, they have the similarity to damages in that both of them are money that people write checks for. They have the difference from damages that you alluded to, in a way, in that they don't make the plaintiffs whole for the wrongful act that is the basis for the suit. They're derivatives. Instead, they are ancillary relief granted because of the expense of the litigation itself. I totally agree with that. Now, you mentioned that the insurance companies know about this problem, and if they want to deal with it, they have to deal with it explicitly. Fair enough. There's this page of the excerpts, excerpt page 14, where it kind of looks like they did. It says, the total limit of liability for claim expenses for covered wrongful acts seeking non-monetary relief. And I looked at the complaint in this case, and it looked like that's just what it is. It's a huge complaint about all the bad things that were done. And then a huge prayer for relief goes on for many, many pages, and no monetary relief is sought. Just certification as a class action and declaratory and injunctive relief, and then it seeks as ancillary relief costs and attorney's fees. So it looks as though it falls within this endorsement that was written just for cases like this. Well, Your Honor, here's where we have a problem or we have a problem below. That analysis, with all due respect, completely begs the question of what the definition of damages means. Because the definition of damages is a monetary award, and what the district judge says. This endorsement here doesn't even invoke the definition of damages. It just says claims for covered wrongful acts seeking non-monetary relief. So all you have to do is look at the prayer and see what relief is sought, not for the ancillary consequences of litigation, but rather for the wrongful acts claimed in the complaint. Well, of course, the word ancillary doesn't appear anywhere in the definition of damages or in any of the exclusions. But here's the point. If you look at paragraph six of that endorsement, there's sort of three things going on here. There's three buckets you can be in if you have a claim against you. You can be in a pure damages bucket, if you will, which is, you know, you hit somebody in your car and they sue you for money damages. There's no injunctive relief. It's over. You can be in a pure, what I would call a pure injunctive claim, which is somebody comes in and says, I want an injunction. You're burning leaves in your backyard, and I'm, you know, being smoked out by it. I'm not suing you for damages. I just want an injunction to keep you from doing something in the future or to, you know, make you do something in the future. I think that's paragraph five in the endorsement. And then paragraph six illuminates this a little bit. I think that's the case at bar, too. I'm suing you to stop you from burning leaves. And when I win my lawsuit, I want the usual answer. If we were operating with a Cutler-Rosie policy, you and I and the California Court of Appeal might all be in agreement. But where I part company with that analysis is here, the insurance company decided to write a definition of what damages is that includes the relief, the attorney's fee relief sought in that complaint. And the insurance company admits that before this court. The problem is paragraph five doesn't say claims for damages. It says claims for wrongful acts seeking non-monetary relief. But to return to my point, that's bucket two. That's what I call a pure injunctive case or pure equitable, pure non-monetary case. Paragraph six talks about what the California jurisprudence in the insurance company says. That's for a mixed claim. Talk about a mixed claim. I want $100 for the smoke damage from your burning leaves, and I also want an injunction telling you not to do it again. Right. So what we know from that is there's a pure damages claim, there's a pure injunctive claim, and there's a mixed claim. We know from the fact that they deal with a mixed claim, but they're not saying if there's an injunctive claim in a case, it's out. They're saying, oh, we'll defend that for you. If there's some injunctive in there and also some damages, we're covered to the full limits and an unlimited defense budget, too. Here's the point. When there is a demand for attorney's fees in the complaint which national casualty concedes is a request for a monetary award and which we therefore are compelled to conclude is a request for damages because that's the definition of damages, a request for a monetary award, we are compelled to find that this case is not in that pure injunctive bucket. It's just not in there. The way they define damages, and they have to live with it now. Now, tell me again how you distinguish this Cutler-Rossi case. There was no definition of the word damages in that case, and the court had to say, what does damages mean to the average person walking down the street? And the court pointed to that supplemental payment provision as essentially carving it out. That's right. They came up with an analysis, and that's where this whole ancillary nature of the remedy came from. That's all cooked up because there was no definition to look at in the past. I'm going to tell you, in my court, the notion that Section 1988 is somehow ancillary to a Section 1983 lawsuit ignores where all the money gets dealt with. Of course it does. Let's do a little thought experiment here. Let's walk through what the reasonable expectation of the policyholder is because everybody agrees that's the test here. If I'm a policyholder and I buy this policy, what do I say? I say, well, let me read this. Now, if I get sued for a purely injunctive claim, I've got very limited coverage here. But that's okay because, A, I may get told to stop doing something. That might not cost me anything. And, B, if it's a mandatory injunction and I'm told to do something, well, at least I can factor that into the cost of my business. But what I'm really worried about is writing the big, fat check. A buck's a buck, so I don't care if I'm writing it as damages or attorney's fees or what. What I'm really worried about is, am I covered if I have to write the big check? Because if I have to write the big check for a million dollars, it's going to put me out of business. That's money that's going out the window forever. I'm not going to be able to plow that money like I would if I was complying with an injunction back into reorganizing my business. If I accept your interpretation, that means that the endorsement is just so much wasted paper. It has no meaning because there is not a single case where if the plaintiff wins, he is not entitled to an award of costs. Well, and I want to talk about that. And that's a very important point, Your Honor. That's the slippery slope. I'd part company with national casualty on that. I think that's wrong. And the reason it is that, as I was saying earlier, there's a difference between attorney's fee awards, which are really bound up as – that's a claim. That's a claim that's an issue. You think that's different from costs of depositions? That's right. Exactly. I mean, you do more discovery on the fees than you do on the merits sometimes. Taxable costs, I mean, those really are not in the game. If you look at the policy, what this policy covers is damages that are – it covers a claim, quote-unquote, seeking damages. Now, I think it's reasonable to say a plaintiff who comes into court and says, I want an injunction and I want a million dollars in attorney's fees is seeking damages and seeking those attorney's fees. I don't think – you're not really talking about the same thing when a plaintiff comes into court and says, oh, I'm seeking costs. It's not a litigation issue. This isn't new with me, and it's not new with Cutler-Rosie. It's very old civil procedure language to distinguish damages from ancillary costs because one comes from the bad thing somebody did, and the other comes from the litigation. Your Honor, I can only ask you to get out of the treatise and into the insurance policy because those treatises and Cutler-Rosie are all about what does it mean absent somebody writing a definition for us. That's where I get into the endorsement. I mean, it looks like that's what they wrote it for. Everybody's thinking in these situations about huge attorney's fees award, and it looks like they wrote it to say in cases where it's equitable relief and not damages. That's how. Yes, but here there's a definition of damages that includes attorney's fees. How do you get to the term damages by looking at Paragraph 5? It says a total limit of liability for a claim for claim expenses as a result of claims. Now claim, as we know, is a defined term. That's something seeking monetary damages. That's right, and it keeps getting circular, so I keep running into that. So damages is incorporated by the definition of claim. Right, and vice versa. Well, it's a puzzler, but I think this. So you're reading the damages definitions. Damages means a monetary judgment award or a settlement from a covered claim, including prejudgment interest, as all part of the definition of monetary judgment. I'm reading it as saying there's coverage for any monetary award or judgment. I'm sorry, I don't understand your question. Well, one reading of that clause is damages means a monetary judgment, that being the judgment, and it will also pick up the costs taxed against the insured. You were trying to say, well, deposition costs wouldn't count, but I don't understand why not. Under that reading, you're relying on all costs taxed against the insured. There's no doubt that they're covered there. That's certainly true. But then that means that any case, any litigation where costs are taxed against the insured becomes a claim for damages. I think that reading is maybe not consistent with the reasonable expectations of the language. I understand that. I think the only way to read the language your way, we have to say there's no case covered by the endorsement. There's an alternative reading of the language, and that is, instead of just reading a phrase within paragraph D on 353 of the excerpts, the damages definition, we read the whole sentence together. Damages means a monetary judgment from a covered claim and all costs taxed against the insured, and we read the and to mean they both have to be there. But in any event, damage is defined. So the question is whether it's an add-on to damages or it's part of damages, because claims means a demand or suit for damages. And as I say, it's circular to me. Could I ask a question about the policy definition? It talks about monetary judgment, award, or settlement. How, if at all, does an award differ from a judgment in the context that we're looking at? Well, I suppose that could mean a number of different things. But for your purposes, are you saying that attorney's fees give rise to an award, although they may not as such give rise to the judgment, the normal judgment for damages that all of us think about? Well, frankly, I was reading that as referring to an arbitration award or something like that, as opposed to distinguishing, you know, different kinds of forms. I mean the federal forms, federal rules of civil procedure have forms at the back so that the judge just signs the judgment with a blank for the cost. Rule 54. Exactly. I guess I'd say, Your Honor, this slippery slope into cost is a problem. If you look at what the policy covers, it's important to consider this connectedness, I think, because what the policy covers is an award of damages on a claim, and a claim is defined as a wrongful act, a specific wrongful act. And I just think you have to look at this language as saying, you know, there's something different between taxable costs, which aren't, they don't have any relationship, they don't bear any relationship to any wrongful act except the wrongful act that's showing up in court, perhaps. Whereas an award of attorney's fees really is, under these statutes in particular, bound up in the substantive right that is being litigated, the substantive wrong that's being complained of in the complaint. And so I think it's the case that a policyholder reading this would say, if I'm asked to write a big check to compensate somebody or to, you know, if a court tells me to write a big check to the other party based upon a wrongful act that I committed, that's what I expect is covered here. If a court ordered me to pay some costs, which, you know, I pay regardless of whether this is an auto accident case or a slip and fall or an employment discrimination case or whatever, I don't think that's what a reasonable policyholder is thinking about. I think you're arguing yourself out of your case there. I mean, you rely on the language, all costs taxed against the insured. And it seems to me, how are we, how is one supposed to parse all taxed against the insured and decide what a reasonable, I mean, it's the plain language. Well, I don't think a layperson would think of costs taxed against an insured as including attorney's fees. And nor would somebody who read Rule 54, because they're treated completely differently. Well, no, I'm saying that all costs taxed against the insured, if there's any claim that's going to result in costs taxed against the insured, it comes with a covered claim for damages. I certainly agree with that analysis as well. But, I mean, I'm really responding to their argument. I mean, that is, in the first instance, that's the case, which is, if attorney's fees and costs are costs, they're covered under that first agreement. First maturing clause, they certainly don't mean to divorce ourselves from that. And that, I think, is the plain language. But what this case seems to be about is something other than the plain language and what Judge Carney was looking at instead of looking at the definition itself. I have a procedural question. There's another coverage here, Carolina. Is anybody arguing on behalf of them? You are, and so. I could tell you, I don't know, 30 seconds, but I think it's really covered in the brief. You're saying it's a drop-down. Yeah, and there's nothing in that Carolina policy that suggests any other result here. It clearly acknowledges they had a copy of this policy. They knew there was a sublimit in there, and they refer repeatedly to limits, plural, of liability in the underlying policy. So I think they've got an unwinnable case just on the plain language. If I understand that part of the argument, they're saying we don't owe anything until the first $5 million is exhausted, and you're saying if something's not covered in the policy, that means it's exhausted. If national casualty exhaust there, next to the line, there's no $4.5 million gap. Okay, thank you, counsel. Thank you, Your Honor. Good morning. May it please the Court, my name is Lisa Wilson, and I represent the attorneys in this case, National Casualty Court. There is a reason, as Judge Shatter noted, there's a reason why Westside consistently reduces the definition of damages to an abbreviated form punctuated by an ellipsis. It does so because the complete definition makes clear that prejudgment interest alone is not damages, and post-judgment interest alone is not damages, and costs alone are not damages. What is the use of the word including in that provision? It clarifies. Doesn't including mean that the thing that follows the word including is included within what precedes the word including? No, I think it clarifies it. I think if you look at the Planet v. Mutant Insurance case, that's a case that had used ultimate net loss instead of damages. It also had a monetary judgment award or something to that effect, and it said, and then thereafter it said attorney's fees costs included, and the court said that it clarifies what needs to come first, which is the monetary judgment, settlement, or award. So I just want to be sure I understand this. So you're saying that damages means a monetary judgment, award, or settlement, period. Okay. It has to be a monetary judgment. And then, just to be sure, that if you have to pay that kind of judgment, it also picks up prejudgment interest and costs taxed against the insurer. So that would include attorney fees, and it would include deposition costs if taxed. Right. And it makes sense. Is that correct? That's your reading? Yes, because those things are ancillary to a judgment, settlement, or award, but in this particular definition it requires that judgment, settlement, or award to be monetary first. So including, in your view, unlike the claimant here, including doesn't mean a monetary judgment includes prejudgment interest or tax costs against the insurer. Sorry, say that again. Well, damages, this is a defined term. That's what I'm looking at. Damages means a monetary judgment including prejudgment interest and all costs taxed. They're reading that as a definition of monetary judgment as part of the damages definition. Well, I think that what I'm trying to say is that there first has to be a monetary judgment, settlement, or award for these. Yes, and the question that we have to wrestle with here is whether or not a prejudgment interest is part of a monetary judgment. Tax costs against the insured is part of monetary judgment. Part of that concept. You're saying no, that you don't use that unless you get, first of all, a stand-alone monetary judgment, and then you can also pick up, as the insured, you can pick up prejudgment interest, cost tax, and so on. Correct, because in real life you aren't going to get, you're not going to get interest on a declaratory relief judgment. You're not going to get interest in a vacuum. No, but you are going to get attorney fees under 1988. They've got a 1983 claim here, and if they prevail, they'll make application for attorney fees under 1988, and if so, so. But a claim for attorney's fees is not an independent cause of action. It's not an independent right. This isn't talking about independent causes of action. This is talking about damages means a monetary judgment. Okay, now the judgment that's issued will be a judgment for what? Award, judgment, award. It'll be for dollar amount. Yes, of course. And dollar amount. The judgment in this case would be injunction granted, and the plaintiffs are awarded $2 million in attorney fees pursuant to Section 1988, pursuant to their pled request. No, because the definition, again, requires that there first be a monetary judgment, not an equitable judgment, but a monetary judgment. There's a non-monetary endorsement, I'm sorry. Counsel, we're getting lost on that part of your argument. Okay. Because what Judge Fischer and I are both thinking is that when we look at the judgment in the record in these cases, there's always money there. Right, but the policy distinguishes between coverage for non-equitable claims such as an injunction which could result in... Let me ask you a couple different questions. Yes. You heard my questions to your adversary about that endorsement for non-monetary claims. Was I looking at the right thing? Did I have this conceptually correct, or was I missing something? No, I think you are correct. I think Paragraph 5... Okay, I don't need you to repeat it. I just wanted to know if I was out in my field. Now, the next thing I'm wondering is, you say the definition excludes these things, and I want to make sure I'm reading the language right. I'm looking at page 353 of the excerpts. This is the definition section, so if you have something different on the podium, I'm sure it'll be identical. Yeah, all right. And I can see several ways of approaching it. One thing I was asking your adversary about is whether damages only covers costs when they're part of... Another thing that I thought of is saying, well, let's give them that. Let's give them that the attorney's fees are damages. And then I look up a claim, and it goes beyond saying demand pursuit, or demand pursuit made upon the insurer for damages. It goes forward and says, and alleging a specific wrongful act. And then when I look back at the damages, it says they have to arise from the covered claim. So that means to me that they have to arise from the demand alleging a wrongful act. And then I look two pages later at the definition of wrongful act, and it's negligent act, error, omission, misstatement, misleading statement, breach of duty committed by an insurer, and the performance of duties. And that would seem to exclude litigating as a wrongful act. So where I come back then is a claim for attorney's fees as ancillary relief is not a claim under the definition of claim. Am I out in left field here, or am I reading this right? You are. I mean, if a plaintiff's going to bring a lawsuit, they're not bringing a lawsuit just for 1988 attorney's fees. There's something else that they're bringing. Sometimes they are. Well, I mean, they're in the language of the policy. Did I just make sure I understand your last answer, though? Are you denying coverage entirely then under this? No. We have provided coverage to them under Paragraph 5 of that non-monetary endorsement, and we've already paid them $100,000. So you owe the $100,000, which is a limit on attorney's fees in non-monetary claim cases, right? Correct. And you paid it. We did. Could you walk me through the language so that I have conceptually correct your reading of the policy so I can make sure I understand it? Which language would you? Walk me through the language. I think it's all going to be in the definition section, these three pages. Well, under – there are two different – Tell me where to start so I have it in order. Let's start with Section B-2. Section B-2 requires – I'm sorry, let's start with Section B-1, C-1. I'm sorry. It's under Defense Investigation and Settlement. Elephant, wrong page. It's at the beginning of the point. Insurance agreements. Oh, start with the insurance agreements? Well, that seems to make sense to me because that's where the duties are all arising. The problem is we get multiple copies of these exhibits. Some of us have different ER. Sorry. Okay, so I should start with the insurance agreements. Sure. Insurance agreements. Yes. The company, that would be national casualty, has the right and duty to defend any claim made against the insurer. A claim is defined as a demand or suit for damages. So from the start, Section B-1 pertains to damages. Okay, so this is not a claim for damages? No. So where does coverage come from? Because it's not a suit for damages, we then look at the non-monetary enforcement, Paragraph 5. Paragraph 5 says that the total limit of the company's liability here under for claims expenses, which are attorney's fees, occurred as a result of claims for wrongful acts seeking non-monetary relief. That's not a claim. How can that be a claim under your reading? If you're saying it has to be a claim for damages and there's no claim for damages here, where does coverage come? This is not a coverage proviso. It's an endorsement, but it uses all of these defined terms. I'm very confused by that. That's secular, isn't it? It modifies the insuring agreement, so it does provide coverage. And let me say, with respect to Paragraph 5, all of the parties in this case have agreed it's the same interpretation of that paragraph, which is that it provides coverage for non-monetary relief. I understand that. I'm just trying to understand that squares with your trying to limit the definition of claims for damages for wrongful acts. I think claims is used in a different way in this endorsement. I think that all of the parties, if you read the brief, interpret it, despite the circular use of claims, all of the parties agree as to what this insuring paragraph is trying to do, which is to provide coverage, albeit up to $100,000, for non-monetary relief or matters involving non-monetary relief. Each of the briefs concedes it. So, I understand your confusion, but I think that there is no confusion amongst the parties. Who suffers from the existence of confusion in a policy? Well, typically, if you find that this endorsement is ambiguous, which National Casualty does not concede that it does, since legal ambiguity requires two or more reasonable interpretations and we only have one, typically, you would find insurance coverage in favor of the insured, which we did. We gave them $100,000 under that paragraph. Well, that wasn't under ambiguity. That was under what you claimed the plain meaning was, and they say, no, it's not. It's limited to a different set of circumstances, so then one has to parse the language, and when it goes to the language, one finds it incorporating definitions of claims and damages. It causes us to get into this brouhaha about whether including in the definition of damages is a modification of monetary judgment or a supplement to what the coverage is. It is a modification. The definition of damages, there is a modification. You have to have the monetary judgment first or the supplement or reward. Before you can get the interest and the cost tax against the insured. The hospital systems case... I guess we're correcting at the discussion that I engaged in with your adversaries. You're saying, don't start with the definitions. Start with the insuring agreement. And the insuring agreement says you have coverage up to the policy limit. And then when I look at page 348 of the excerpts, I see the critical limit. It says the limit of the company's liability for claim expenses incurred as a result of claims for covered wrongful acts seeking non-monetary relief is $100,000 for each claim. And what you're telling me is that $100,000 goes out the window and it turns into $5 million if you accept any of the readings urged by your adversary. Well, the problem with... Even simple people would know they had a $100,000 limit on the non-monetary claims. Yeah. Well, I won't comment. I've got this right now. Well, let me clarify something. There's a fundamental flaw with their argument. They seem to believe that Paragraph 5 and Paragraph 1B, or is it 1A, the general duty to defend insuring agreement, are mutually exclusive. You either get defense under one or you get defense under the other. They don't work that way. In this particular case, with a 66-page complaint and a 17-count prayer for equitable relief, you're either going to get coverage under that Paragraph 5 or you don't have coverage under this policy. National Casualty made a determination there was coverage under Paragraph 5 and it therefore discharged its obligations by paying that amount. Does your reading of Paragraph 5 necessarily say that a claim for declaratory relief, let's say, accompanied by a claim of right for an award of attorney's fees under 1988 is a non-monetary claim? No, that's addressed in the definition of damages itself, which distinguishes between... I mean, it would be redundant. Good answer. It would be redundant to have a monetary judgment settlement award and cost tax evidency. It's redundant. I mean, you're only going to get the cost if you've got the judgment, you've got the arbitration award, or you have a settlement. Counsel, you know, interest on the award may be the tail on the dog, but attorney's fees in 1983 cases certainly are not. But you've got to look at the larger picture. I mean, the damages definition itself provides that. I mean, under their interpretation, you could take this out to an extreme as to what cost tax against the insured are going to trigger a duty to defendant of this policy. First of all, it would render the non-monetary endorsement illusory. And second of all, there would be no instance where you would not have coverage. I mean, potential for deposition would trigger coverage. Potential for trial would trigger coverage. All of those potentials exist. That kind of reductio ad absurdum contention really ignores, I think, the significance of attorney's fee awards when we're dealing with, and it's not only in 1988, it's also in that California statute that they're invoking. Attorney's fees do not compensate someone for past harm. All they do is provide money to someone in trying to obtain relief for that harm. In hospital systems. And that's more than a sharp stick in the eye. But they're not damages. They're just not. Under hospital systems, you've got a plaintiff who went through the administrative process and won. If you have to hire a lawyer to get a declaratory judgment about somebody else's wrongful acts, you're saying that that's not an integral part of the harm that you're sustaining? I'm saying that the type of the only trigger under Section I.B. is when there's personal monetary judgment, solemn or award. You're not without coverage, though, if you're insured as facing a declaratory judgment action. You've got coverage under the non-monetary endorsement up to $100,000. I have another question, which is the question I asked counsel at the beginning. Do you believe that there are no substantive damages available under any of the causes of action pledged, assuming that all they did was plead and prove the case that's alleged in the claim for injunctive relief, that if they decided that, after all, there may be some damages, I don't know whether they were avoiding damages because they don't want to defeat the class to serve or whatever, but that, in other words, if they proved their 1983 case, those would entitle them to a monetary compensatory award? No, I don't. No, I don't. I don't think the causes of action rates in that complaint do present a potential for monetary damages. Under the statutory, the Lannerman Act, under the 1983, under the Rehab Act, under none of those do they have the potential for damages if they chose to plead? No. Well, we've got to look at the complaint as it's currently pledged. And so, no. I mean, in other words, we don't have to look at the complaint if there's no substantive right to damages under the causes of action pled. Well, I don't think it's as simple as that. I mean, I think that you've got to look at the allegations of the complaint. Well, I do. That's what I'm saying. We're looking at the allegations of the complaint. Right. It seeks injunctive relief, but if all they had to do was simply add a paragraph without adding anything else, nothing more, the same act so that the defendants wouldn't be able to argue, oh, we weren't notified that this conduct of ours was not going to lead to damages because they were going to be defending against the identical conduct. Do any of those statutes provide the potential for that kind of damage above by the plaintiff? Not in this case. So you're saying that these wrongs do not give rise to a damages remedy. Right. So it wouldn't really matter if they asked for one or not. No. And I don't want to- Is that right? Yes, you're correct. I'm sorry. And this is- That was the question I asked, and that was the answer you're giving. Okay. Would you like any more detail? Anything else that focuses on what Judge Shader has been asking you about. Okay. There's a lawyer that has appeared before us many times, and until the Supreme Court changed the law, he used to bring police brutality cases, and he would tell the jury, look, I know my clients are really unattractive guys, but the police shouldn't have beaten them up, award them $1. Just $1 in nominal damages just to send a message that it's wrong. And the jury would award the $1, and then he'd ask for a quarter of a million dollars in 1988 attorney's fees. That's a typical 1983 suit. That's the kind of thing Judge Shader was talking about. Right. Now, what I'm thinking is, if he brought that suit, and the Supreme Court, and maybe it was Hensley that said no more of those. Farrar against Hobby, I think. Farrar against Hobby. Thank you. Free Farrar. Under that suit, as I understand it, the $5 million applies. But if he brought a different suit, if he said, this time I'm bringing a class action on behalf of all prisoners in Los Angeles, I want police practices changed. I want a standing master who will consider my recommendations, and we're going to change police practices. If he specifically disclaims any damages for any of the individuals that he thinks the police mistreated, then the defendant has a $100,000 limit on claims expenses, and that's the end of it. That's true. Although I don't. The way the insurance works. Although I don't. Yes, let's start with the second lawsuit first, the one that only tries to remedy an entire system, or an existing system, pursuant to equitable causes of action. Yes, I think that would trigger it under the $100,000 non-monetary endorsement. What if he didn't specifically disclaim damages, just didn't plead it? Well, you know, we're, I mean, in this particular case, I think it has been disclaimed. This is. Okay, that's your argument. Right. That's why I was asking my question earlier. The California law duty to defend and the like has potential for damages. Right. One thing to disclaim, another thing not to act. My hypo was there because he could say, oh, and incidentally, I want $100,000 for each of these people who got beaten up. As long as he knows that he's flying in the weeds with it, it could come. You know, I think that. My hypo, though, not this case. Yeah, I mean, this is a unique case. This is a case that has 56 pages of, I mean, really detailed allegations about changing an existing system. I think Lowe versus Golden Eagle is kind of what both of you are alluding to when a plaintiff disclaims coverage. That's one part of the analysis. The other part is it's a class action. And not only is it a class action, it's a petition for writ of mandate. People, the plaintiffs in this case, want to compel performance. They're looking to provide monetary damages to individuals. And it's made expressly clear in this complaint. With respect to the potential for indemnity, you're right, Justice Fischer, that that is a rule in California. But there are limitations on the duty to defend that exist not even in the exclusions in an insurance policy. They're judicially created or recognized. One is you can't speculate about unpled claims to manufacture coverage. The second is if the potential for liability is so far-fetched and tenuous, there is no duty to defend. And the third is the insurance company is obligated to defend claims that are subject to the mutual intentions of the parties. All of these limitations apply in this type of case. Second of all, the line of cases that you didn't reference by name, but I know what you're referring to, I don't think are applicable in here. Gray versus Zurich, Montrose versus Mann, in all of those cases, there was a request for damages. It was indisputable. Instead, the difference between that case and this case is there was a question regarding whether the claim for damages pursued under an uncovered theory would be barred under a particular insurance policy. And that's not this case. This case is more like upper deck, where, and I think the upper deck court makes a fine distinction between the Horstmann and Montrose type cases and this type of case. Okay. If I could, just briefly, they say it's important to distinguish between claims that raise the possibility of coverage because they are on an uncovered theory, like a contract action rather than a court action, and claims that do not raise the possibility of coverage because the claims allege damages of a different nature than those covered by the policy. Here we have a latter situation, and ensure it has no reasonable expectation of coverage for a type of damage not alleged in the underlying complaint. I guess there can be a lot of claims where there is absolutely no potential. I'm thinking of a case we had in this court called Lessing versus Freestone, and that the Supreme Court reversed. And in that case, they said there was no possibility for any individual in the class, even if all the wrongs were committed, to get a nickel. Right. So I suppose that in that class action, there would have been a duty to defend up to $100,000 if they had this policy. Yes. But even if every wrong was committed just as alleged, and every wrong that could be imagined, anything like the ones that were alleged, the law is iron, not a nickel. Yes, I agree. The Supreme Court says so. That's right. Is that the kind of thing you're talking about? Yes, exactly. If Lowe versus Golden Eagle says it, it takes it out of the enlarged pale cast of cases like Gray and Horace Mann. And that's the situation here. I know I'm way over my time. Thank you. We've taken you both way over your time. We have to move from one council to the other. You're Carolina? Yes. Well, it's our fault. We'll give you some time. It's only $5 million. I guess first and foremost, I want to- Just don't give us such interesting- Oh, I apologize. I'm Karen Kaufman. I'm here for a second call for Carolina Casualty. As I read your brief, you are essentially agreeing with the appellant because you don't want the drop-down. I am agreeing with the appellant because I agree that it would not be a good thing to read this as a situation with a $4.9 million gap. I was sort of amazed at that. I was amazed at your brief, that you're saying, yeah, make them pay the $5 million. I thought what you would say was saying anything they don't cover, we do, is like saying if they don't cover medical malpractice or legal malpractice, we cover it. But you didn't make that argument. Is that a bad argument? I just see this very clearly as a case where the first $5 million is covered by the primary. And if it isn't, and there is somehow an interpretation that allows for $100,000 of defense costs only to be paid by the primary, then I want to be clear that I don't see any interpretation of these policies that allows, that requires Carolina to come in and then provide $5 million worth of excess coverage in terms of claims expenses for this case. I don't think you're getting what my concern is. The most common excess policy is probably the personal umbrella. People buy car insurance and they buy fire insurance on their home, and the homeowner's policy also has the general liability attachment. The general liability excludes professional liability. They're all written that way. I understand that. Businesses have exactly the same sort of insurance. They buy business insurance on all the business vehicles, and then they buy a general liability policy for their business, and it excludes professional liability. And if they're professionals, they buy another professional liability policy. Now, and they also buy an umbrella for individuals and businesses. They buy a $5 million umbrella or whatever. Now, what I'm thinking is if the person's driving a car, they bought the car, they kept it beyond the 30-day grace period, and they did not add it to their policy, or if they were practicing law or medicine and they didn't buy a professional liability policy, it's not covered by the primary policy. And under your argument, you'd be conceding that it's covered by the umbrella, except that you would argue, no, the primary policy should cover it. Your Honor, I think there's a distinction between an umbrella policy and an excess policy. This is a following-form excess policy, which basically says we provide exactly the same coverage that the primary provides. It's a straight-following coverage. Only more, as opposed to different qualities. That's not really the distinction. That's the way umbrellas are typically written, so that they don't cover the car that was never put on the policy, the underlying policy. The umbrella refers to if there's something in this horizontal scheme of insurance, if there's a gap somewhere, I'll drop down and fill this. The excess is really more of a vertical additional, because it follows exactly to the primary. The umbrella's never covered the gaps for professional liability and unnoticed cars. This policy, Your Honor, reads that it follows form, conforms to the terms and conditions of the national policy exactly, except it has two limits of liability and deductible. So that takes out the $100,000. Well, not necessarily, Your Honor, because the question is, what is the limit? Let me just, there's a couple points I really would like to make are, has, if this is a $100,000 defense obligation, has that national policy been exhausted by the payment of losses when that $100,000 is paid? As to whether it's been exhausted? I think the answer is right in the endorsement, because the endorsement clearly indicates that there are additional limits of liability, though, because if there weren't, it wouldn't say payments by the company in plain expenses reduces the policy's limit of liability by the amount paid. In other words, if $100,000 of plain expenses is paid, the limit of liability, which is defined as the $5 million on the declarations page, is reduced by $100,000. So clearly we haven't exhausted the policy. And I think this also works to explain why there would be coverage in the first place. But if they say that there's zero coverage for the $4.9 million, how is that not exhaustion? Why would there be language in the endorsement that provides for reducing the limit of liability? It reduces it to zero. If you move to Paragraph 6 of the endorsement, there's similar language. And that's another thing, too. If you look at this endorsement, under Paragraph 5, there's Paragraph 5 and Paragraph 6. If we accept, as we should, that they mean different things, Paragraph 6 is the mixed injunctive or equitable relief combined with damages. In that case, according to this endorsement, there is basically $5 million worth of insurance available. And that's why you agree with the appellant. In that case, you would reduce the $5 million by the claim expenses. If it's not a mixed case, then there's no such reduction. That's what the policy provides. Chris, this raises an interesting question, then. If, in fact, Paragraph 5 defines the scope of coverage under the insurance clauses, then the reduces the policy limit by the amount paid doesn't really square with that. It should say, you know, is the limit. The endorsement really isn't clear. It really is confusing. It can't be read very logically. And I think another thing that's very important to remember is that this is an insured. Your typical insured is not going to draw a distinction between a suit for damages and a suit for equitable relief. I think pretty much anyone who gets sued, that person knows he's getting sued and is concerned about, well, is this the type of wrongful act that I purchased coverage for? This isn't likely that a normal consumer is going to draw these fine distinctions that we find in the treatises between damages and equitable or non-monetary relief. And because the definitions in this policy clearly state that a claim is something that seeks damages and damages are any monetary award, the reasonable expectation of a non-lawyer is going to be that if I get sued and it's going to cost me money, I have coverage so long as this is a wrongful act. And the only other point that, well, two points. Another thing is if you look at the definition of damages, which is something else that a normal consumer would do, not only do you see what damages are, but it also provides that damages do not include punitive damages, fines, taxes, salaries of the insured, costs to modify or adapt a building, and matters deemed uninsurable. If I'm a consumer and I'm curious as to what exactly damages are and I see in the first paragraph, oh, it's a monetary award, including costs, and then when they list what it does not include, there's nothing there about it. It does not include costs incurred or costs required to pay to the other side in a lawsuit. It does not include attorney's fees that you're required to pay. I think this definition, taken as a whole, including the portion that defines what is not included, is very important. Counsel, your insuring agreement, paragraph one of the Carolina policy, says that the policy provides excess coverage over the underlying insurance only after the underlying insurance has been exhausted by payments for losses. And then it goes on. It says, and shall then apply in conformance with the provisions of the primary policy at its inception, except for premium limit of liability otherwise specifically set forth. The exceptions are not really what's at issue here, but it looks to me like this language, shall then apply in performance with the provisions of the primary policy, would mean if the primary policy does not insure, we don't either. Correct. And if the primary policy provides defense only. But that's not about the limit of the primary policy. It's about the insuring agreement, the coverage. Because it needs to be exhausted. The triggering event is exhaustion by the payment of losses. So exhaustion is, what is exhaustion is a relevant question, as is what are losses. And losses as in the phrase. What does in conformance with the provisions mean? As it follows form exactly to the national union policy, we step into the shoes of national unions and provide exactly the same coverage that that primary policy provides. But if the primary policy only applies to claims expenses up to $100,000, and there is no insurance. It's not just that the $100,000 is a policy limit, but there is no other insurance for claims expenses in claims for non-monetary relief. Then why wouldn't both policies have excluded? I agree that if there is no coverage for anything except $100,000 in claims expenses under the national policy, then that is exactly the same situation when Carolina steps down. We have, both policies have $5 million limit of liability on the desk page. And if in fact we're going to step into their shoes, because there's no difference in that limit of liability, we should stand in exactly the same position in the national union. That would give you an alternative approach to how to read that clause. It says that your policy, the Carolina policy, applies in conformance with the provisions of the primary policy, except for the limit of liability. And if you read that endorsement in the primary policy as part of the policy limit, then what it would mean is that they get to keep their policy limit, because it's part of their policy of $100,000 for the claims expenses, and then you pay under your policy, if they had to pay anything for attorney's fees, if their policy had coverage for attorney's fees at all, but it had a limit of $100,000 in non-monetary claims, and you pay all the rest of it, because you promised to pay in conformance with the provisions of their policy, except for the limit of liability. And the limit of liability is defined as the number on the declarations page, which is $5 million. Our limit of liability is similarly $5 million, and therefore, while it could be different, in this case it's the same. We have nowhere in our policy that we said we will pay $5 million in defense costs. You're saying that the provision that says $100,000 only for non-monetary is not operative as a limitation of liability on national claims? The term limit of liability is defined as the limit of liability shown on the declarations page, so the limit of liability, therefore, is $5 million. I'm looking at page 366, which I think is the deck page that you're telling me to look at, and I don't see what you mean. Deck page of which policy, Your Honor? Page 366 of the Carolina policy. The Carolina policy? Page 366 of the excerpt of the record, I should say. I have a different version, but... Just look at your excerpts. If you look at item 3 on the Carolina... Wait, all I have there is item 7 on page 366 of the record. Then go back one page, Your Honor. Okay, I've got 3. Okay. Limit of liability, $5 million. But what's more important is what is the limit of liability under... That's your limit. That's not mine. Under the national casualty policy, if you go to the declarations page there, the limit... The part of the deck page that deals with the underlying insurance is on the next page. That's a different argument, Your Honor. It's laid out in our brief. This is actually a typographical error, and if you want to work with this, then there's no obligation at all on the part of the Carolina. Wait, you're saying this is a clerical error? Yes, I am. Okay, what page should I look at that has it right with the clerical error? I would look at the first page of the national casualty policy, which is the declarations page for national casualty. The national policy can't support your obligations. 377. The question is... 377? Okay, I've got it now. Thanks. What the exception says, if our limits of liability are different, if national's limit of liability is different from Carolina's limit of liability, then the Carolina governs. However, what I'm trying to point out to Your Honor is that, in fact, the limits of liability are not the same. The limit of liability is clearly identified as item 3 on the national casualty declaration page, and item 3 also on the Carolina casualty page. In both cases, the limit of liability is $5 million. Well, now if I read it your way, you never owe a nickel no matter what, right? Because they have to have an underlying policy with a $5 million limit, and your limit is $5 million. If there's coverage and they exceed the $5 million in a judgment or settlement, yes, our policy is stricter. If they owe $100,000 in defense costs, and you deem that payment of those monies exhausts their policy by payment of losses, then we come in and the exception does not apply. The limit of the obligation of Carolina is only, likewise, to pay $100,000. I think we've gotten there. Thank you. Just to put a cap on this, Your Honors, I mean, this really is about reasonable expectations, and I just submit that somebody buying the national casualty policy is going to believe what they read there, which is that they are covered if they have to write a big check, and what's happening here through this sort of convoluted, is really extremely unfair to the policyholder. What's happening here is if you took that endorsement, the extension endorsement, off the policy and you read that policy, you would say, I'm covered for this case. There's a monetary award requested. Somebody's coming after me for millions of dollars in attorney fees. I'm covered. Now, NWOC's national casualty says, well, I've got good news for you. In addition to that coverage, I'm handing you this endorsement. Well, an endorsement doesn't always expand coverage. It often contracts. This one is entitled extension endorsement, and in their brief they say repeatedly that they were giving us additional coverage that wasn't there before, and that's simply not true. What's going on here is that endorsement that is labeled extension of coverage is traveling as a stealth exclusion. If we didn't have that endorsement here in the court today, they could not make this argument that that endorsement somehow limits coverage that is otherwise clearly granted under this policy. If you agree, I read this and it says the total limit of the company's liability here under for claim expenses, not for coverage, it says for claim expenses, and then it deducts it, deducts it as a cost against the limit of liability. It's not hybrid, is it? Is your reading of this that it is a redefinition of liability, or is coverage of certain claim expenses is defined? It clearly is. It's a funny hybrid, because it's clearly... Wait, wait, wait. Claim expenses are the expenses that are involved in that, as contrasted with an award against them in the other lawsuits. Right. Correct. But what's going on here is that claim expenses are our cost of defense. I understand that. But they are also, in this case, they're defined as loss that is reducing the limits of liability of the policy. And the reason that happens here is the actual casualty doesn't want to end up writing this policy and ending up having to pay $5.1 million. So it's saying, I'm only going to pay 5 here. I'm going to give you 100 and call it claim expense. But unlike other claim expense, this 100 will reduce the limit of liability. All the other claim expense won't. But in any event, you just can't let this ostensible extension of coverage end up being an exclusion that reduces the coverage that's granted. Thank you, Your Honor. Thank you, counsel. And thank you all. You are not the only lawyers who enjoy this sort of thing. Thank you, Your Honor.
judges: Kleinfeld, Fisher, Shadur